IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSEMARIE B. MIMS

    Plaintiff,

v.                                                                                   No. 2:16-CV-00136-MCA-GBW

DAVOL, INC., and C.R. BARD, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion and Brief to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. Pro. 12(B)(6)*, filed May 16, 2016 [Doc. 18]; and *Plaintiff's Motion to Certify Question of State Law to the New Mexico Supreme Court*, filed July 5, 2016 [Doc. 24]. For the reasons set forth below, the Motion to Dismiss is granted-in-part and denied-in-part. The Motion to certify is denied.

This lawsuit arises out of injuries alleged to have been caused by a surgical mesh product that was inserted into Plaintiff's body to treat an abdominal hernia. [Doc. 10-1]

**Standards Governing a Rule 12(b)(6) Motion to Dismiss**

Fed. Civ. P. Rule 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, a complaint must contain sufficient allegations of fact, taken as true, "to state a claim for relief that is plausible on its face." *In Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). In applying this test, the Court accepts as true "all plausible, non-conclusory, and non-speculative" facts alleged in the complaint. *Shrader*


*v. Al Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest [that] the defendant is liable." *Collins*, 656 F.3d at 1214.

**BACKGROUND**

The Court assumes that the following facts, which are taken from *Plaintiff's Amended Complaint for Damages for Personal Injury Resulting from Negligence, Strict Liability, Breach of Warranties, and Fraud* (the *Complaint*), are true. [Doc. 10-1] On January 25, 2005, Plaintiff, who had an abdominal hernia, underwent surgery in Colorado Springs, Colorado, to have the "Bard® Composix® Kugel® Medium Oval, 11 cm x 14 cm" (the Product) inserted into her abdomen. [Doc. 10-1 ¶¶ 1, 11, 13, 80] The Product, which is designed, manufactured, and distributed by Defendants, is purposed to fix abdominal hernias. [Doc. 10-1 ¶ 5]

In 2011, in New Mexico Plaintiff started feeling nauseated, vomiting, experiencing extreme abdominal pain and tenderness in her abdomen, and having frequent fevers. [Doc. 10-1 ¶ 92; Doc. 19 p. 15] She could not keep food down, and she had difficulty eating. [Id.] She was also suffering dehydration and weight loss. [Id.] Eventually, Plaintiff's symptoms led her to the emergency room in Las Cruces, New Mexico. [Id]. There, she learned that she had intestinal perforations; that the Product had migrated through her abdominal wall; and that she had abscesses, a bowel obstruction,

sepsis, and chronic intestinal fistulae (abnormal connections or passageways between the intestines and other organs). [Doc. 10-10 ¶ 83]

In October 2012, Plaintiff underwent an ileostomy due to a diseased intestine. [Doc. 10-1 ¶ 92] After the surgery, she had complications including several infections, and severe burning of her skin from fecal matter and bile. [Id.] She had to be fed intravenously. [Id.] When her condition worsened, she underwent another surgery in February 2013. [Id.] During the February surgery, which lasted approximately six hours, the surgeon discovered that the Product had eroded into her midline incision, and was infected. [Id.] The Product, which had to be removed, was partially disintegrated and misshapen. [Doc. 10-1 ¶ 14] When Plaintiff eventually recovered from that surgery, many of her symptoms returned, and she had to undergo yet another surgery—this time to remove a life threatening abdominal abscess. [Doc. 10-1 ¶ 92]

The symptoms that Plaintiff experienced were caused by defects inherent in the Product. [Doc. 10-1 ¶ 16] The design of the Product requires that it be inserted into and through an area of the body with high levels of bacteria which can adhere to the mesh and cause immune reactions, a breakdown in the tissue, and other adverse reactions. [Doc. 10-1 ¶ 31] The Product is unreasonably susceptible to "creep" which is a gradual elongation and deformation, to shrinkage and contraction, and to becoming "improperly mated to the delicate and sensitive areas of the abdomen[.]" [Doc. 10-1 ¶¶ 25, 27, 31] Because the materials used to make the Product were not sufficiently strong or resilient, once the Product was inserted into Plaintiff's abdomen it disintegrated and became misshapen. [Doc. 10-1 ¶¶ 17, 18, 43] Further, because the material that is used to make

3

the Product is biologically incompatible with human tissue, the Product caused Plaintiff to have a negative immune response, tissue inflammation, and the "formation of severe adverse reactions to the mesh." [Doc. 10-1 ¶¶ 22-23]  Plaintiff, having suffered each of these effects caused the defective Product, was forced to undergo additional surgeries. [Doc. 10-1 ¶ 30]

The side effects experienced by Plaintiff as a result of the Product's defects were not unique to Plaintiff; numerous patients around the world who were implanted with the Product, and with similar products made by Defendants, experienced the same reactions. [Doc. 10-1 ¶¶ 20, 40]  Immediately after the Product was placed on the market, Defendants began receiving notices of its defects and failures.  [Doc. 10-1 ¶ 50]  Despite the high rates of failure, injury, and complications associated with the Product, including the frequent need for repeat surgeries, Defendant failed to disclose these issues to the medical community.  [Doc. 10-1 ¶ 29]  Instead, Defendants continued to promote the Product as safe and effective without warning Plaintiff, or the general public, of its adverse effects.  [Doc. 10-1 ¶¶ 47, 49] Defendants also hid information from physicians regarding the magnitude and frequency of the medical problems associated with the use of the Product, and continued marketing and distributing the Product to the medical community.  [Doc. 10-1 ¶¶ 28-29, 49, 51]

Based on the injuries that she suffered as a result of the Product's defects, Plaintiff filed a seven-count complaint, alleging (1) negligence, (2) strict liability based upon a design defect, (3) strict liability based upon a manufacturing defect, (4) strict liability

4

based upon a failure to warn, (5) breach of express warranty, (6) breach of implied warranty, and (7) fraud. [Doc. 10-1 p. 22-38]

Defendants seek dismissal of Plaintiffs claims on the following grounds. First, relying on the premise that Plaintiff's claims are governed by the procedural and substantive law of Colorado, Defendants argue that Plaintiff's claims are time-barred by Colorado's statute of limitations; and that Plaintiff's claims should otherwise be dismissed for failure to state a claim under Colorado law.[1] [Doc. 18 p. 1-2, 6-20] Secondly, and in the alternative, they argue that Plaintiff's claims should be dismissed under New Mexico law for failure to state a claim. [Doc. 18 p. 2-3, 20-22]

**ANALYSIS**

### I. Plaintiff's Tort Claims are Governed by New Mexico Law

The Court's analysis of whether Colorado law applies, as urged by Defendants, or whether New Mexico law applies, as urged by Plaintiff, is governed by New Mexico's conflict of laws rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in [a given state] must conform to those prevailing in [the state's] state courts."). [Doc. 18 p. 6; Doc. 19 p. 13] In regard to tort actions, "New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA,

---

[1] *Plaintiff's Motion to Certify Question of State Law to the New Mexico Supreme Court* [Doc. 24] pertains to the conflict of laws issue raised by Defendants' argument.

111, ¶ 12. "The place of the wrong is the location of the last act necessary to complete the injury." *Santa Fe Tech., Inc., v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 15.

Recognizing that Plaintiff's tort claims shall be governed by the law of the state in which the "wrong" occurred, Defendants contend that Colorado is the place of the wrong because it was there that the Product was sold to the hospital, and ultimately implanted into Plaintiff's body. [Doc. 18 p. 7] New Mexico law is not supportive of Defendants' position. *See M.R. v. Serenicare Funeral Home, L.L.C*, 2013-NMCA-022, ¶ 12 (holding that where an injury originates in one state, and manifests in another, the place in which the injury manifests is "place of the wrong"). Although Plaintiff underwent surgery in Colorado to have the Product implanted into her abdomen, she did not experience the adverse effects of the Product until she was in New Mexico. In similar circumstances, New Mexico Courts have held New Mexico to be the place of the wrong. *See Cronin v. Sierra Med. Ctr.*, 2000-NMCA-082, ¶¶17-18 (noting that in a case in which a plaintiff developed health complications in New Mexico from the negligent implantation of an intrauterine contraceptive device in California, New Mexico was the "place of the wrong"); *Tarango v. Pastrana*, 1980-NMCA-110, ¶¶ 2, 8 (concluding that where a plaintiff underwent a tubal ligation in Texas which proved unsuccessful once she became pregnant in New Mexico, the tortious act was committed in New Mexico). Because, the injuries that led to Plaintiff's claim manifested in New Mexico, the "place of the wrong" is New Mexico, not Colorado. Plaintiff's tort claims are, therefore, governed by the substantive law of New Mexico.

While the Court has concluded that Plaintiff's tort claims are governed by the substantive law of New Mexico, even if the Court were to hold that the claims were governed by the substantive law of Colorado, the Court would nevertheless apply New Mexico's general three year statute of limitations. NMSA 1978 § 37-1-8 (1976). Pursuant to New Mexico's choice of law rules, statutes of limitation are procedural, and therefore governed by the law of the forum state. *Nez v. Forney*, 1989-NMSC-074, ¶ 4. In New Mexico, a general three year statute of limitations applies to tort claims. NMSA 1978 § 37-1-8. This limitations period, not the two year limitations period found in Colorado law, governs the claims brought in the district of New Mexico.

## II.     Certification to the New Mexico Supreme Court is Not Appropriate

After Defendants filed the *Motion to Dismiss*, Plaintiff sought to have the following question certified to the New Mexico Supreme Court: "[w]hether under the choice of law provisions of the laws of the [s]tate of New Mexico the place of the wrong in surgical mesh tort cases is the location where the plaintiff's injuries first manifest."[2] [Doc. 24 p. 2] Although New Mexico jurisprudence is silent on the precise issue of whether New Mexico is the "place of the wrong" when injuries caused by a medical device that was surgically implanted in another state manifest in New Mexico, the Court is not persuaded that this issue requires certification. New Mexico Courts have held New Mexico to be "the place of the wrong" where surgery in another state caused injuries that manifested in New Mexico. *See Montano*, 2015-NMCA-069 ¶¶ 2, 9-12 (holding that,

---

[2] Defendants oppose certification on the ground that certification of this matter is unnecessary and would lead to needless delay. [Doc. 33]

under a "place of the wrong" analysis, New Mexico law governed tort claims brought by a plaintiff who experienced injuries in New Mexico after receiving bariatric surgery in Texas), *rev'd on other grounds*, NO. S-1-SC-35214, NO. S-1-SC-35297, 2017 WL 962447 (N.M. Mar. 13, 2017) (reversing the lower court's holding based on a comity analysis, but not addressing the lower court's choice of law analysis); *Cronin*, 2000-NMCA-082, ¶ 17-18 (recognizing that health complications occurring in New Mexico as a result of an out-of-state surgery are, under the place of the wrong analysis, governed by New Mexico tort law); *Tarango*, 1980-NMCA-110 ¶¶ 2, 8 (concluding that New Mexico law applied to claims raised by a plaintiff who underwent surgery in Texas, and experienced the at-issue injury in New Mexico). The choice of law principles set forth in those cases provide a "reasonably clear and principled course" for resolving the conflict of laws issue presented in Defendants' *Motion to Dismiss*. *See Pino v. United States*, 507 F.3d 1233, 1236 (2007) (10th Cir. 2007) ("[W]e will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves."). Accordingly, Plaintiff's *Motion to Certify* shall be denied.

### III. Overview of New Mexico Products Liability Law

New Mexico recognizes products liability claims sounding in common law negligence and in strict liability. *Parker v. St. Vincent Hosp.*, 1996-NMCA-070, ¶ 26. The *Complaint* includes claims arising under each of these theories.

To prevail in a negligence claim related to a defective product, Plaintiff must "establish (1) the existence of a duty owed to Plaintiff[], (2) a breach of such duty, (3) a

causal connection between [Defendants'] conduct and the injury to Plaintiff[], and (4) damages resulting from such conduct." *Parker v. E.I. DuPont de Nemours & Co., Inc.*, 1995-NMCA-086, ¶ 35.  Under New Mexico negligence law, "manufacturers and distributors of products have a duty to use ordinary care in producing products so as to avoid a foreseeable risk of injury caused by a condition of the product or the manner in which it is used." *Smith ex rel. Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 19.  This duty exists as a matter of law.  *Id.* ¶ 20.  A manufacturer must use ordinary care—that which a reasonably prudent supplier would use in the course of his business—in formulating, designing, making, inspecting, testing, and packaging the product.  NMRA UJI 13-1407; NMRA UJI 13-1410.

"Under the strict products liability theory, a supplier of products is liable for harm proximately caused by an unreasonable risk of injury resulting from a condition of the product or from the manner of its use." *Bryco Arms*, 2001-NMCA-090, ¶ 13.  To prevail under a strict liability theory, Plaintiff must establish that: (1) the product was defective, (2) the product was defective when it left Defendants' hands, and it was substantially unchanged when it reached the consumer; (3) that because of the defect the product was unreasonably dangerous to the consumer; (4) that the consumer was injured or damaged; and (5) the defective product was the proximate cause of the injury or damage.  *Garner v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir. 1984).  "An unreasonable risk of injury is a risk [that] a reasonably prudent person having full knowledge of the risk would find unacceptable." *Bryco Arms*, 2001-NMCA-090, ¶ 13.  The "unreasonable risk of injury test allows for proof and argument under any rational theory of defect." *Id.* ¶ 14.  Three

categories of "defect" are recognized in New Mexico: manufacture, design, and defects in the marketing related to a failure to warn. *Fernandez v. Ford Motor Co.*, 1994-NMCA-063, ¶ 27.

### IV.    Defendants' Challenges to the Plausibility of the *Complaint*

#### 1.    Plaintiff's Allegations Plausibly Demonstrate Causation

Defendants argue that the *Complaint* must be dismissed in its entirety because Plaintiff failed to allege facts showing that the Product's defects caused her injuries. [Doc. 18 p. 20-21]  Defendants' argument in this regard does not address Plaintiff's claims or factual allegations specifically; and, having reviewed the *Complaint*, the Court is not persuaded by Defendants' sweeping assertion.

In New Mexico, a defective product is a cause of injury if "it contributes to bringing about" the injury and if the injury would not have occurred without it.  NMRA UJI 13-1424.  "It need not be the only explanation for the" injury, "nor the reason that is nearest in time or place; [i]t is sufficient if occurs in combination with some other cause to produce the result." *Id.*  "To be a 'cause,' the defective product must be reasonably connected as a significant link to the" injury. *Id.*  Where, as here, a "failure to warn" products liability claim is raised, causation as to that issue must additionally be shown by evidence that "in light of all of the circumstances . . . an adequate warning . . . would have been noticed and acted upon to guard against the danger[.]"  NMRA UJI 13-1425.

The *Complaint* includes the following allegations pertaining to the issue of causation. On February 25, 2013, Plaintiff underwent surgery during which the surgeon, Dr. Anthony Burton, discovered the Product partially disintegrated and misshapen in

10

Plaintiff's abdomen.  [Doc. 10-1 ¶ 14]  That the Product disintegrated and became misshapen inside Plaintiff's abdomen indicated that the Product was defective.  [Doc. 10-1 ¶ 17]  Dr. Burton concluded that the Product's disintegration and misshapenness caused several serious injuries to Plaintiff including, among other things, abdominal pain, high fever, tenderness at the site where the Product was inserted, unusual intestinal symptoms, intestinal fistulas, sepsis, and bowel perforations.  [Doc. 10-1 ¶¶ 15-16]  It also caused Plaintiff to undergo multiple surgical interventions.  [Doc. 10-1 ¶ 43]  Further, because the Product was made from material that is biologically incompatible with human tissue, once it is implanted in the human body, the Product promotes (and in Plaintiff's case it promoted) a negative immune response.  [Doc. 10-1 ¶ 22]  These allegations, taken as true, adequately demonstrate that Plaintiff's injuries were caused by the Product's defects.  UJI 13-1424.

Additionally, as to the particular issue of Defendants' failure to warn, Plaintiff alleged that "Defendants failed to provide sufficient warnings" to put Plaintiff "on notice of the dangers and adverse effects caused by implantation of the Product."  [Doc. 10-1 ¶ 46]  Instead, Defendants marketed the Product "as safe" and as "free from the kinds of risks and hazards that the [Product] actually posed."  [Doc. 10-1 ¶ 49]  Plaintiff "would rather have died" than continue "with the pain, discomfort, and disfigurement [that resulted from the] complications" associated with the Product.  [Doc. 10-1 p. 20] Plaintiff also alleged that "[b]ut for the Defendants' failure to warn, the Plaintiff would not have sustained [the alleged] injuries"; that Plaintiff's injuries "would not have occurred if adequate warning and instruction had been provided"; and that the Defendants' "failure

11

to warn caused . . . Plaintiff not to be aware of the defects [that] caused her injury." [Doc. 101 ¶ 129]  From these allegations a reasonable jury could find that had Plaintiff been warned of the actual risks associated with the Product, she would have declined to have it surgically implanted in her body.  *See* UJI 13-1425.

2.  **Plaintiff's Manufacturing Defect Claims**

"A product contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product."  *Spectron Dev. Lab v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 14 (alteration omitted).  Defendants argue that Plaintiff has failed to allege that the Product deviated from its intended design and, therefore, her manufacturing defect claims must be dismissed.  [Doc. 18 p. 21]  Plaintiff acknowledges that the *Complaint* lacks sufficient allegations to sustain her manufacturing defect claims.  [Doc. 19 p. 6]  These claims, Count I (to the extent that it claims a manufacturing defect) and Count III shall be dismissed accordingly.

3.  **Plaintiff's Fraud Claim**

According to Fed. R. Civ. P. 9(b) a party "alleging fraud . . . must state with particularity the circumstances constituting fraud. . . . Malice, intent knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*  The Tenth Circuit has construed Rule 9(b) as requiring a complaint to "set forth the time, place, and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).  Defendants argue that Plaintiff has failed to satisfy the heightened

pleading requirement applicable to claims of fraud pursuant to Rule 9(b). [Doc. 18 p. 21] Having reviewed the *Complaint*, which contains general allegations of fraud, but omits facts that would satisfy the specificity requirement of Rule 9(b), the Court concludes that Defendants' argument is well founded. Because the *Complaint* fails to satisfy the specificity requirements of Rule 9(b), Count VII shall be dismissed.

### 4. Plaintiff's Remaining Claims

Defendants argue that Plaintiff has failed to state a claim for a breach of an express warranty. [Doc. 18 p. 21] Plaintiff concedes this matter. [Doc. 19 p. 9] Accordingly, Count V of the *Complaint* shall be dismissed.

Count VIII of the *Complaint*, titled "Discovery Rule, Tolling, and Fraudulent Concealment" and Count IX of the *Complaint*, titled "Punitive Damages" shall also be dismissed. Count VIII comprises a recitation of the factual bases pursuant to which Plaintiff is able to circumvent any applicable statute of limitations; it does not constitute a claim. [Doc. 10-1 ¶¶167-75] Further "punitive damages" does not constitute an independent claim; rather, it is "part and parcel of a liability determination[.]" *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991). Plaintiff is not prohibited from pursuing punitive damages as a part of her liability determination, if warranted.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY SO ORDERED** that *Defendants' Motion and Brief to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. Pro. 12(B)(6)* (Doc. 18) is **GRANTED IN PART; and DENIED IN PART.**

The Motion is **GRANTED** as to Count I, insofar as it pertains to a manufacturing defect**.**

The Motion is **GRANTED** as to Counts III, V, VII, VIII, and IX.  Plaintiff is granted leave to amend her Complaint as to Counts III and V.

As to Count I (except as it pertains to a manufacturing defect), Count II, Count IV, and Count VI, Defendants' *Motion* is **DENIED.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion to Certify Question of State Law to the New Mexico Supreme Court* (Doc. 24) is **DENIED**.

**IT IS SO OREDERED** this  22nd day of March, 2017.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**